**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ASHLEY ESPEJO,

Plaintiff,

**COMPLAINT**

-against-

**PLAINTIFF DEMANDS A TRIAL BY JURY**

THE CITY OF NEW YORK,

Defendant.

-----------------------------------------------------------X

Plaintiff ASHLEY ESPEJO, ("Plaintiff"), by and through her attorneys PHILLIPS & ASSOCIATES ATTORNEYS AT LAW, PLLC, hereby complains of the Defendant, upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action alleging that the Defendant has violated the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq*., as amended, ("ADA"), the New York State Human Rights Law, New York State Executive Law §§ 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-107 *et seq*. ("NYCHRL"), and seeks damages to redress the injuries she has suffered as a result of being discriminated and retaliated against by her employer on the basis of her disability (Bipolar Disorder) and for requesting a reasonable accommodation (specifically, to be placed on the 9 a.m. to 5 p.m. shift, instead of the 3 p.m. to 11 p.m. shift). Defendant failed to engage in an interactive process with Plaintiff after receiving her request for an accommodation, and instead, wrongfully terminated her because of her disability and in retaliation for her reasonable accommodation request, in violation of the law.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. §§ 12101 *et seq*., and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over Plaintiff's claims brought under state and city law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 30, 2021, soon after being terminated.

6. Plaintiff received a Notice of Right to Sue from the EEOC on August 31, 2021. A copy of the Notice is annexed hereto as Exhibit A.

7. This action is being commenced within 90 days of the issuance of the Notice of Right to Sue.

8. Notice requirements of § 8-502 of the New York City Administrative Code have been met by the contemporaneous transmission of this Complaint, to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York. A copy of the transmittal letter to the NYCCHR, *et ano.*, is annexed hereto as Exhibit B.

9. Also, the Office of Corporation Counsel of the City of New York and the NYC Department of Information Technology & Telecommunications, were given notice on October 15, 2021, of the anticipated filing, a copy of the complaint, and an offer to engage in pre-litigation talks.

10. On October 25, The Assistant General Counsel NYC Department of Information Technology & Telecommunications declined an offer to engage in pre-litigation talks and informed Plaintiff of the claim number assigned by the New York City Law Department: 2021-032211.

**PARTIES**

11. Plaintiff Ashley Espejo ("Ms. Espejo") is a 35-year-old female. She lives in the City of New York, Bronx County.

12. Ms. Espejo received a bachelor's degree in 2009 from John Jay College.

13. Ms. Espejo has a diagnosis of Bipolar Disorder for which she is being successfully treated by a combination of medication, psychotherapy and maintaining a consistent and regulated schedule.

14. Bipolar Disorder is a mental health impairment that imposes a substantial impact on brain function, a major life activity, and is recognized by EEOC's interpretive regulations of the ADAAA as an impairment that will virtually always be recognized as a disability under the law.

15. Defendant, City of New York, (the "City") is a municipal corporation, located within the State of New York.

16. The City of New York is comprised of many departments including the NYC Department of Information Technology & Telecommunications ("DoITT").

17. The NYC 311 Call Center is overseen by DoITT.

18. Plaintiff was an employee of the City, DoITT, and the NYC 311 Call Center ("NYC 311") at all relevant times

19. Defendants employ 15 or more employees.

## MATERIAL FACTS

20. On October 29, 2020, Ms. Espejo was notified by DoITT that she was certified as a "candidate eligible for consideration" for the position of Call Center Representative with NYC 311, after having passed the required written examination for employment. She was then put on a waiting list for placement.

21. On March 29, 2021, Ms. Espejo was offered the position "probable permanent Call Center Representative" with NYC 311, earning a salary of approximately $35,083 per year, plus benefits.

22. Ms. Espejo accepted the offer and was scheduled for her first day of work on April 5, 2021.

23. Ms. Espejo has long wanted to work for the City of New York, as her father does, and was very proud and excited to start her job.

24. From April 5, 2021, to April 18, 2021, Ms. Espejo attended the training program she was required to "satisfactorily complete."

25. The training program was led and overseen by Anthony and Jessica (collectively, the "trainers"). During training, the trainers made very clear that they had the authority to hire, fire, and determine shift assignments.

26. The trainers stated several times during the training that satisfactory completion was based on two elements: attendance and exam scores.

27. Ms. Espejo was never absent or tardy from the training program. The trainers told Ms. Espejo that she was "doing great" and had scored highly on the exams.

28. The Call Center Representative position was staffed 24 hours a day, with employees working one of 4 shifts. Ms. Espejo observed that the trainees in her class were being assigned either the 9 a.m. to 5 p.m. or the 3 p.m. to 11 p.m. shift.

29. On or about April 15, 2021, Ms. Espejo was informed that she was being assigned the 3 p.m. to 11 p.m. shift.

**Plaintiff's Request for a Reasonable Accommodation**

30. As soon as Ms. Espejo was told that she was being assigned the later shift, she informed Anthony that she needed to request the 9 a.m. to 5 p.m. shift as an accommodation for a health condition. Anthony told her to contact Human Resources (HR).

31. After several failed attempts to reach HR by phone, an HR Representative finally responded to her email request. The representative provided her an accommodation request form and instructed her to print it, complete it by hand, and email the confidential document to the Office of Diversity and EEO. Presumptively, this direction was to keep the employee's medical information confidential.

32. Ms. Espejo did not have a printer or a scanner and therefore needed to get instructions on an alternative mode of submitting the accommodation. Her many efforts at contacting HR were ignored, finally she was able to ask Lucianne, who was making a presentation to the trainees what alternatives were available for submission of the request.

33. Lucianne instructed Ms. Espejo that once she completes the request form and medical release and obtains the required medical documentation, she should provide this confidential information to Anthony, who would scan it for her and then email it back to her. Upon receiving the email from Anthony, she could forward it to the Office of Diversity and EEO.

34. Ms. Espejo promptly obtained a medical letter from her treating Mental Health Provider.

35. The medical letter dated April 16, 2021, explained that: 1) Ms. Espejo was receiving treatment for Bipolar disorder, and as part of the treatment, 2) she takes 900 mg of Lithium

nightly at 9 p.m., 3) that Lithium can have a sedating effect, and did in fact cause lethargy in Ms. Espejo, and that 4) her medical treatment regime contraindicates tasks that require attention and focus for some period of hours after taking her nighttime dose of medication.

36. The medical letter further explained that persons with Bipolar Disorder require a stable work and sleep schedule. Schedules that fluctuate or do not allow for adequate nightly sleep can trigger a manic episode which is dangerous and can lead to hospitalization. Finally, the letter stated that he advises Ms. Espejo against working nighttime shifts for this medical reason.

37. On Friday, April 16, 2021, as soon as she had the letter and had completed the documents, Ms. Espejo provided Anthony 1) the detailed medical letter described *supra* from her treating mental health provider, 2) a completed 4-page document marked confidential in several places and entitled "Reasonable Accommodation Request Form," and 3) a signed "Authorization For Release of Health Information."

38. On the same day, at approximately 5 p.m., Anthony emailed a scanned copy of these documents to Ms. Espejo.

39. Ms. Espejo emailed the scanned accommodation request documents to the Office of Diversity and EEO on Sunday, April 18, 2021.

40. Ms. Espejo felt upset and concerned that her trainer was able to view and retain this highly personal and confidential information related to her disability. She is acutely aware of the stigma and stereotypes attached to mental health disabilities.

**<u>Defendants' Failure to Engage in the Interactive Process and Illegal Termination</u>**

41. After submission, Ms. Espejo never heard another word from her trainers, HR or any other City employee regarding her accommodation request, other than that it had been received.

42. On Monday and Tuesday of the next week (April 19, 2021 and April 20, 2021), Ms. Espejo continued with the hands-on training and was answering 311 calls successfully.

43. However, Ms. Espejo felt her trainers avoided interaction with her and treated her differently soon after she provided the documents to Anthony.

44. On Wednesday, April 21, 2021, just three business days after her accommodation request was submitted, Ms. Espejo arrived to work on time.

45. At some point during that morning, Anthony instructed Ms. Espejo to follow him, under the auspices of checking out her locker. Instead, he led her down to a private room where Lucianne and another City employee that she had never met before were waiting for her.

46. After sitting, that unidentified City employee immediately pushed an envelope toward her.

47. Ms. Espejo was confused, and asked, "What's this?" He responded, "Your services are no longer required here."

48. Ms. Espejo tried to clarify, asking in disbelief, "I am being fired?" Tearing up she asked why this was happening. She informed them that she had done very well in training and on the exams. She asked several times for an explanation for the termination.

49. Ms. Espejo finally asked if the reason for the termination was because of her accommodation request, and she stated, with a feeling of desperation, that if that was the reason, she would go ahead and work the 3 p.m. to 11 p.m. shift.

50. Every question asked by Ms. Espejo was met either with silence, or with the statement, "Your services are no longer required here."

51. She was directed to immediately leave the workplace.

52. As demonstrated by her passage of the entrance exam and her performance in the Call Center training program, inter alia, Ms. Espejo was able and qualified to perform her job

responsibilities with or without a reasonable accommodation.

53. During her employment, Ms. Espejo did nothing that explained or justified her termination.

54. The City failed entirely to engage in an interactive process with Ms. Espejo about her reasonable accommodation request and terminated her instead.

55. Plaintiff was terminated due to her disability, Bipolar Disorder, and for requesting the reasonable accommodation of being assigned to the 9 a.m. to 5 p.m. day shift.

**Harm Suffered by Plaintiff**

56. Ms. Espejo was shocked, humiliated and extremely saddened by her termination.

57. Not one to cry much in public, she bawled the entire trip home on the subway.

58. Thereafter, she experienced anxiety, depression, hopelessness, and sleep disturbance.

59. The inexplicable and unjust termination exacerbated her disability, Bipolar Disorder, which prior to the termination had been well-controlled.

60. Ms. Espejo felt embarrassed and humiliated, struggling to explain to others why she was fired from the job that she was so excited about and felt was so promising for her future.

61. She sought treatment from a psychologist for the anguish she was experiencing.

62. Ms. Espejo have suffered concern, stress and indignities because the City required her to reveal private medical details more broadly than necessary to request an accommodation.

63. Ms. Espejo's medical privacy has been infringed on as the accommodation request required a broad, open-ended medical release form. The medical release form did not include an expiration date.

**Defendant's Discriminatory Actions and Conduct Under the Law**

64. Defendant's actions and conduct were intentional and aimed at harming Plaintiff.

65. Defendant's subjected Plaintiff to its policies and practices required for requesting an

accommodation, which are not narrowly focused and tailored as required by the ADA, NYSHRL, and NYCHRL, violating her privacy and disability rights.

66. Defendant's knowingly and willingly refused to provide Plaintiff with a reasonable accommodation for her disabilities.

67. Plaintiff suffered an adverse employment action, termination, because of her disability and request for accommodation.

68. But for Plaintiff's disability and request for an accommodation, a protected activity, she would not have been subjected to an adverse employment action at the hands of Defendant.

69. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation, which such employment entails.

70. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

71. Plaintiff has experienced severe emotional distress.

72. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of the Court.

73. Defendant is an employer subject to the ADA, NYSHRL, and NYCHRL.

74. At all relevant times, Plaintiff was an individual with a disability within the meaning of the ADA, NYSHRL, and NYCHRL.

75. At all relevant times, Plaintiff was and is a qualified individual who can perform the essential functions of her employment with or without a reasonable accommodation as defined by § 12111(8) of the ADA.

76. At all times relevant, Plaintiff's disabilities were mental impairments which substantially limit one or more major life activities within the meaning of § 12102(1)(A) of the ADA.

77. Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

78. As such, Plaintiff demands punitive damages against Defendant.

**AS A FIRST CAUSE OF ACTION**
**DISCRIMINATION UNDER THE ADA**

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

80. Plaintiff claims Defendant violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336), as amended, as these titles appear in volume 42 of the United States Code, beginning at Section 12101.

81. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112 "Discrimination" states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

82. Defendant engaged in an unlawful discriminatory practice by failing to engage in the interactive process with Plaintiff pursuant to her accommodation request and failing to provide Plaintiff with a reasonable accommodation.

83. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff and terminating her because of her disability.

**AS A SECOND CAUSE OF ACTION**
**RETALIATION UNDER THE ADA**

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

**85.** 42 U.S.C. § 2000e-3(a) states that it shall be an unlawful employment practice for an employer:

> (1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, …

86. The above section forbids retaliation for engaging in protected activity.

87. Defendant engaged in an unlawful discriminatory practice by terminating Plaintiff because she requested a reasonable accommodation for her disability, a protected activity under the law.

**AS A THIRD CAUSE OF ACTION**
**DISCRIMINATION UNDER THE NYSHRL**

88. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

89. The New York State Executive Law § 296(1)(a) provides that,

> It shall be an unlawful discriminatory practice: For an employer … because of an individual's … disability… to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

90. Defendant engaged in unlawful discriminatory practices in violation of the New York State Executive Law § 296(1)(a) by creating and maintaining discriminatory working conditions and otherwise discriminating against Plaintiff because of her disability.

**AS A FOURTH CAUSE OF ACTION**
**RETALIATION UNDER THE NYSHRL**

91. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this Complaint.

92. The New York State Executive Law § 296(1) (e) and (h) forbid retaliation for engaging in protected activity.

93. Defendant engaged in unlawful discriminatory practices in violation of the New York State Executive Law § 296(1)(e) and (h) by terminating Plaintiff because she requested a reasonable accommodation for her disability, a protected activity under the law.

**AS A FIFTH CAUSE OF ACTION**
**DISCRIMINATION UNDER THE NYCHRL**

94. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

95. The Administrative Code of City of NY § 8-107 [1] provides that,

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived…disability…to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

96. Defendant engaged in unlawful discriminatory practices in violation of the New York State Executive Law § 296(1)(a) by creating and maintaining discriminatory working conditions and otherwise discriminating against Plaintiff because of her disability.

**AS A SIXTH CAUSE OF ACTION**
**RETALIATION UNDER THE NYCHRL**

97. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

98. The Administrative Code of City of NY § 8-107 (6) forbids retaliation for engaging in protected activity.

99. Defendant engaged in an unlawful discriminatory practice by terminating Plaintiff because she requested a reasonable accommodation for her disability, a protected activity under the law.

## JURY DEMAND

100. Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by the ADA, the NYSHRL, and the NYCHRL, by discriminating against Plaintiff on the basis of her disability and in retaliation for her reasonable accommodation request.

B. Awarding damages to the Plaintiff, retroactive to the date of her discharge for all lost wages and benefits resulting from Defendant's unlawful termination of her employment and to otherwise make her whole for any losses suffered as a result of such unlawful employment practice;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, interests, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants unlawful employment practices.

Dated: New York, New York
October 27, 2021

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**

By: ______________________

Michelle A. Caiola, Esq.
*Attorney for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
T: (212) 248-7431
F: (212) 901-2107
mcaiola@tpglaws.com